THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EMILIO VALENTÍN, Defendant and Appellant.

No. 10504. Argued June 2, 1944.—Decided June 8, 1944.

*Ubaldo Aponte* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal)*, and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Appellant was accused in the District Court of Guayama of the crime of murder in the first degree, consisting in having killed Gregorio De Jesús on November 13, 1932. The accused was arraigned on December 9, 1932. After two trials were held in neither of which the jury reached a verdict, the district attorney moved, on April 24, 1935, for a removal of the action to the Judicial District of Ponce. On August 1, 1935, the removal sought was decreed, and on May 12, 1937, the trial of the case finally began in the District Court of Ponce. On May 14, 1937, the jury found the accused guilty of voluntary manslaughter, and on September 30, 1937, the court sentenced him to three years' imprisonment in the penitentiary. On the same date he was sentenced the accused appealed. The transcript of the evidence was certified by the stenographer on April 13, 1944, that is, six years and seven months after the appeal had been filed, it not appearing from the record before us that the district attorney or the Department of Justice took any steps to compel the stenographer to comply with his duty of transcribing the stenographic notes within a reasonable time in order to avoid these delays which are unnecessary and inexcusable, and only serve to discredit the administration of justice. After more

than five years had elapsed from the commission of the crime to the date of the sentence, and after having rested quietly in the strenographer's notebooks for nearly seven years, this case finally arrives at this court almost upon the twelveth anniversary of the day on which a human being was unlawfully deprived of his life.

To support his appeal, the accused charges the trial court with the commission of six errors. We shall discuss them in the same order in which they have been assigned.

■ That the court erred in not striking out totally the testimony of the witness Margaro de Jesús, leaving in the record that part of the testimony wherein he said that while passing the accused the latter pulled out a gun.

The incident which serves as a basis for this assignment happened in the following way: The prosecuting attorney having stated that he was going to waive the testimony of Margaro De Jesús, since it was cumulative evidence, the defense insisted that the district attorney was bound to present all the witnesses listed in the information, and that if he waived the testimony of said witness the accused had the right to have the jury instructed to the effect that this testimony, voluntarily suppressed, should be considered as adverse to the prosecution. The district attorney then presented the witness who testified: That on the day of the occurrence, between eight and nine at night, he, Justino Díaz, and Julio Díaz were coming from a family dance at the home of Genaro Colón, and on passing the home of Juan Bautista Rivera they saw the accused standing on the stairs thereof, and when they passed the accused went after them. Upon arriving in front of the home of the accused he told them that if they were Liberals, he soiled the mother of the three of them, pulling out a revolver at the same time and saying "Come forward who's willing." The revolver was white and nickel-plated.

The defense moved that the whole of the testimony be stricken. The lower court ordered the striking of all the words and threats uttered by the accused but refused to do this as to the fact that on the same night of the occurrence and a little before the meeting with his victim, the accused had a revolver in his hands, the description of which agreed with that given by the witness who had testified before Margaro De Jesús. The trial court did not err in refusing to strike that part of the testimony. It was admissible as a corroboration of the fact that the accused, a short while before the commission of the crime with which he is charged, was armed with a revolver, which was the weapon used by the accused in killing his victim as alleged in the information. Moreover, if any error had been committed the accused was in no way damaged, since he admitted having killed his victim with a revolver shot, contending that he was forced to kill him in self-defense.

█ That the verdict rendered and the sentence imposed are contrary to the evidence and the law.

We have studied carefully the evidence introduced by both sides. The prosecution's evidence, which was believed by the jury, tended to prove that at the moment in which the deceased, accompanied by a friend, passed the place where the accused was, the latter, without any preliminary words or dispute between him and his victim, addressed Gregorio de Jesús, saying: "Well, Goyito, it seems incredible that you, who used to be such a good Socialist, have voted with the Liberals; you are nothing but a good-for-nothing son of a bitch," and immediately shot him with his revolver. The bullet perforated the intestines and bladder and on the following day he died. The explanation given by the accused immediately after the occurrence was that "Goyo de Jesús asked me to fight and when we arrived at the place he pushed me, I fell backward, and the gun went off hitting him on a leg. At the moment the accused said nothing about the deceased trying

to attack him with a barber's razor and that for that reason he had been forced to shoot him.

The evidence for the defense tended to prove that it was the deceased who challenged and insulted the accused, lunging towards him and putting his hand in his back pocket; that at the moment a shot was heard, but none of the witnesses for the defense saw the weapon or knew who the person was who had shot; that shortly after the occurrence, the wounded man told the witness Julio Ramos: "Julio, take that out of my pocket," and then Ramos searched the wounded man's pocket and found the razor, which he gave to the accused's sister-in-law. That razor was not handed over to the police and nothing was known about it until it was introduced during the trial.

As rebuttal evidence the prosecuting attorney offered the testimony of the policeman who arrived at the place where the wounded man was immediately after the occurrence. He testified that when he arrived at said place, witness Ramos was not there; that it was later, when he sent for some neighbors to remove the wounded man, that Ramos appeared; and that when Ramos arrived he, the policeman, had already searched the wounded man and had not found any weapon on him.

The evidence for the prosecution is sufficient in our judgment to support a verdict of murder. The accused can not complain that the jury decided the conflict of the evidence against him, granting him, however, the benefit of a characterization of the offense as manslaughter.

▮▮▮▮ When policeman Sergio Díaz Cartagena was testifying as a rebuttal witness, the prosecuting attorney asked him if the accused complained at any time that Gregorio De Jesús had threatened to kill him. The defense objected on the ground that it was not rebuttal evidence. The witness answered in the negative and the defense took exception.

The lower court did not err in permitting the question. The evidence for the defense tended to prove that the deceased had threatened to kill the accused. It seems natural for a citizen threatened with death to resort to the police for protection. The fact that the accused did not take such precautions tends to prove that such threats were never made.

Nor did the trial court err in telling the jury that the razor was admitted in evidence in regard to the testimony of witness Julio Ramos and subject to the credibility of the witness. The testimony of said witness did not really deserve any credit. He testified that when the occurrence took place he was sleeping at his home. He did not hear the shot. He was sent for and then he went to the wounded man. When he arrived there the policeman had not yet arrived. He did not remember the condition of the wounded man. The latter was complaining, but he did not know what he was complaining of, since he neither noticed or worried about it. The only thing he remembered referred to the finding of the razor in the pocket of the wounded man. He did not remember how the wounded man was dressed or whether his clothes were or were not stained with blood. It is natural that if the jury did not believe any part of Ramos' testimony, neither should it believe what he testified to as to finding the razor.

 In this assignment it is urged that the inferior court erred in refusing to give to the jury the following instruction, requested by the defense:

"When a person presents himself before another, provokes and insults him, challenges him, attacks him, notwithstanding the fact that the other person is trying to avoid the dispute, and later tries to reach, and does reach, in a violent attitude the place where the attacked one was, seizing him by the hair with one hand while trying to pull something out of a pocket, with the other, such circumstances are enough to make him believe that he was in danger of being seriously injured or of losing his life, even if he did not

know whether or not the assailant had a weapon with him, as well as to justify the death of the assailant.''

From the record it does not appear that the defense took any exception to the ruling of the court. On the contrary, it appears that when it ended its instructions the court told counsel for the defense that if he wished to take any exception he could do so in the presence of the jury. Counsel for the defense answered that he did not wish to take any exception. This should be enough to dismiss this error. However, after carefully considering the question raised by the appellant, we have arrived at the conclusion that the same is lacking in merit. The lower court was not bound to give the instruction of self-defense as proposed by the defense. The instructions given by the court to the jury more than covered the matter of self-defense and complied with the law in its form as well as in its essence. *People* v. *Santiago,* 56 P.R.R. 104; *People* v. *Dones,* 56 P.R.R. 201; *People* v. *Guzmán,* 61 P.R.R. 611.

■■ Appellant complains that upon giving his instructions to the jury the lower court did not make a summary of all the evidence introduced.

It is true that the court is bound to make a summary of the evidence, as has been decided in the cases of *People* v. *Cartagena,* 54 P.R.R. 827, and *People* v. *Lebrón,* 61 P.R.R. 634; but when the court, due to inadvertence or any other reason, does not make such a summary, it is incumbent on the accused to ask that the court do so. If the accused, as happened in the present case, waives that right when expressly stating that he has no objection to the instructions, he has no reason to complain. Morover, we are not convinced that the accused has suffered any prejudice.

The sentence appealed from must be affirmed.